STACY, C. J., dissenting.
This is an action to enjoin the execution by the defendant Board of Commissioners of the city of Raleigh, in behalf of the defendant, the city of Raleigh, of a contract with the trustees of Rex Hospital, pursuant to resolutions duly adopted by the said Board of Commissioners and the said trustees, on the ground that the said Board of Commissioners has no lawful power to bind the defendant, the city of Raleigh, by the execution in its name of said contract, and that its execution by the said Board of Commissioners will result in irreparable damages to the plaintiff and all other citizens and taxpayers of the city of Raleigh.
The contract which the defendant Board of Commissioners proposes to execute on behalf of the defendant, the city of Raleigh, is in writing and is in words and figures as follows:
"NORTH CAROLINA — WAKE COUNTY.
"This contract made this ___________ day, 1935, by and between the city of Raleigh, a municipal corporation of North Carolina, organized under the laws of said State, party of the first part, and the trustees of Rex Hospital, a corporation duly chartered under the laws of the State of North Carolina, party of the second part;
"Witnesseth: That whereas the trustees of Rex Hospital, a corporation, party of the second part, has offered to provide adequate hospital care for the indigent sick and afflicted poor of the city of Raleigh for a period of thirty years, beginning on 1 July, 1935, and continuing for thirty years thereafter, for a consideration of ten thousand dollars annually to be paid by the city of Raleigh, party of the first part, on the first day of July, 1935, and on the first day of July of each succeeding year thereafter for a period of thirty years from and after 1 July, 1935; and whereas, the care and maintenance of the indigent sick and afflicted poor of the city of Raleigh is a necessary expense of the said city; and whereas the city of Raleigh is obligated by the Constitution of North Carolina and the laws of said State to provide for the care and maintenance of its indigent sick and afflicted poor; and whereas the city of Raleigh is expressly authorized and empowered to enter into this contract by an act of the General Assembly of North Carolina, 1935, it being House Bill No. 288, and
"Whereas, the trustees of Rex Hospital, a corporation, propose to build and construct a new, modern, and up-to-date hospital with proper facilities for the adequate care and maintenance of the indigent sick and afflicted poor of the city of Raleigh, through a loan to be obtained from the Federal Emergency Administration of Public Works of the United States;
"Now, therefore, it is mutually agreed between the parties hereto, as follows: *Page 371 
"1. That the trustees of Rex Hospital, a corporation, will construct, equip, and maintain a modern, up-to-date hospital with proper and necessary facilities for the care and maintenance of the indigent sick and afflicted poor of the city of Raleigh, and hereby agree to care for and provide proper hospital facilities in said hospital for the indigent sick and afflicted poor of the city of Raleigh for a period of thirty years, beginning on 1 July, 1935, and continuing for a period of thirty years thereafter, in consideration of the payment by the city of Raleigh to the trustees of Rex Hospital of the sum of ten thousand dollars annually for said services, said sum to be paid on 1 July, 1935, and on the first day of July of each succeeding year thereafter for said thirty-year period.
"2. And the said city of Raleigh, party of the first part, in consideration of said services to be rendered by the trustees of Rex Hospital, party of the second part, hereby agrees and binds itself to pay to the trustees of Rex Hospital the sum of ten thousand dollars annually, for a period of thirty years, the first payment of ten thousand dollars to be made on 1 July, 1935, and the remaining twenty-nine annual payments each in the sum of ten thousand dollars to be paid on the first day of July of each succeeding year thereafter for said period of thirty years.
"In testimony whereof, the city of Raleigh, party of the first part, has caused these presents to be signed in its name by its mayor, and to be attested by its city clerk, and its corporate seal to be hereto affixed, all by authority of a resolution of its Board of Commissioners, this day duly passed and carried, a copy of which is attached to this contract, marked Exhibit `A,' and made a part hereof;
"And the trustees of Rex Hospital, a corporation, party of the second part, has caused these presents to be signed in its corporate name by the chairman of its board of trustees, and its corporate seal to be hereto affixed and attested by the secretary of said board of trustees, all by order of a resolution of its board of trustees this day duly passed and carried, a copy of which is attached to this contract, marked Exhibit `B,' the day and year first above written.
"CITY OF RALEIGH,
 By _________________________________________________________ "Attest: Mayor.
_________________________________________________________ Clerk of the City of Raleigh.
"TRUSTEES OF REX HOSPITAL,
 By _________________________________________________________ Chairman of the Board of Trustees of Rex Hospital.
"Attest:
___________________________________________________________________ Secretary to the Board of Trustees of Rex Hospital." *Page 372 
The resolution referred to in the foregoing contract as Exhibit "A" was passed and adopted by the Board of Commissioners of the city of Raleigh, the governing body of said city, pursuant to the provisions of an act of the General Assembly of North Carolina, and expressly provides "that there shall be levied annually at the time other taxes are levied a special tax upon all the taxable property within said city of sufficient rate and amount to provide for the payments called for under said contract, as the same mature." The said act was passed by the General Assembly of North Carolina at its regular session in 1935, in accordance with the requirements of section 14 of Article II of the Constitution of North Carolina, and is as follows:
"H. B. 288. An act to amend section two thousand seven hundred and ninety-five of the Consolidated Statutes of North Carolina, relating to ordinances for the public health of the State.
"The General Assembly of North Carolina do enact:
"SECTION 1. That section two thousand seven hundred and ninety-five of the Consolidated Statutes of North Carolina be and the same is hereby amended by adding at the end thereof the following:
"The governing body of any city or town, when deemed for the best interest of the city or town, is hereby given authority to contract, for periods of not to exceed thirty years, with public or private hospitals or institutions within or without the city or town, for the medical treatment and hospitalization of the sick and afflicted poor of the city or town upon such terms and conditions as may be agreed: Provided, that the annual payments required under such contract shall not be in excess of ten thousand ($10,000) dollars. The full faith and credit of each city or town shall be deemed to be pledged for the payment of the amounts due under said contracts. The contracts provided for under this act, and the appropriations and taxes therefor, are hereby declared to be for necessary expenses within the meaning of the Constitution of North Carolina, and shall be valid and binding without a vote of the majority of the qualified voters of each city or town, and are hereby expressly exempted from any limitation, restriction, or provision contained in the County Fiscal Control Act, and acts amendatory thereof, as it may be applicable to cities or towns by virtue of section sixty-five, chapter sixty, Public Laws of North Carolina, 1931.
"No limitation, restriction, or provision contained in any general, special, private, or public-local law, or charter of any city or town, relating to the execution of contracts and the appropriation of money, and levying of taxes therefor, shall apply to contracts authorized and executed under this act: Provided, that the town of Lincolnton shall not enter into any such contract except after a public hearing at the county *Page 373 
courthouse in Lincoln County, notice of which hearing shall be published for two successive weeks in a newspaper published in the county. The provisions of this act shall not apply to the municipalities of Salisbury, Spencer, East Spencer, Rocky Mount, Reidsville, Leaksville, Madison, Asheville, Charlotte, Edenton, Gibsonville, Greensboro, Hamlet, High Point, Jamestown, Rockingham, Tarboro, and Wilmington.
"SEC. 2. This act shall not apply to the city of High Point, in Guilford County; to the city of Elizabeth City, in Pasquotank County; nor to the counties of Beaufort, Camden, and Lee, or to any city or town therein; nor to any city or town in the counties of Ashe, Avery, Columbus, Davidson, Durham, Gates, Jackson, Martin, and Rockingham; nor to the counties of Ashe, Alexander, Brunswick, Clay, Cumberland, Forsyth, Haywood, Henderson, Jones, Macon, Montgomery, Moore, Pasquotank, Robeson, Sampson, Transylvania, Wilkes, Catawba, Lincoln, Surry, Washington, Rowan, Warren, Vance, Johnston, Edgecombe, Halifax, Cumberland, Davie, Forsyth, Gaston, Harnett, Iredell, Pitt, Stanly, Union, and Yadkin.
"SEC. 3. That before this act shall apply to any city or town in Catawba County, it must be submitted to a vote of the people of said Catawba County.
"SEC. 4. That all laws and clauses of laws in conflict with the provisions of this act are hereby repealed.
"SEC. 5. This act shall be in force and effect from and after the date of its ratification."
The act was duly ratified on 6 March, 1935.
When the action was called for trial at the April Term, 1935, of the Superior Court of Wake County, judgment was rendered as follows:
"This cause coming on to be heard before the undersigned, Clawson L. Williams, judge presiding over the courts of the Seventh Judicial District, at the regular April Term, 1935, of the Superior Court of Wake County, and a jury trial having been waived, and it having been agreed by and between Banks Arendell, attorney for the plaintiff, and Thomas W. Ruffin, attorney for the defendants, that the court might hear the evidence, find the facts, and render judgment; and evidence having been offered by both the plaintiff and the defendants, and the court having heard the arguments of counsel, the following facts are found to be true:
"1. That this action was brought by the plaintiff, a citizen and taxpayer of the city of Raleigh, in Wake County, North Carolina, in behalf of himself and all other citizens and taxpayers of the city of Raleigh, and the city of Raleigh and the individual defendants composing the Board of Commissioners of the city of Raleigh; and the court finds that all persons interested in this controversy who are necessary and proper parties for a determination of the questions presented are before the court and are represented by counsel. *Page 374 
"2. That this action was brought for the purpose of securing a restraining order against the defendants, prohibiting them from executing and carrying out a contract which the defendants propose to enter into with the trustees of Rex Hospital, a corporation, unless restrained by the court.
"3. That said contract provides briefly that the trustees of Rex Hospital will furnish hospital facilities for the care and maintenance of the sick and afflicted poor of the city of Raleigh for a period of thirty years in consideration of said city paying to said hospital corporation the sum of $10,000 annually therefor, beginning on 1 July, 1935, and continuing thereafter until said thirty-year period has expired.
"4. That the purpose of said contract is to assist the trustees of Rex Hospital in amortizing a $350,000 Government loan, which in turn will result in modern hospitalization for the poor of the city of Raleigh, and all of its citizens. And the court finds as a fact that the $10,000 annual payment called for in said contract to be made by the city of Raleigh is a necessary expense of the city within the meaning of the Constitution of North Carolina; and that said contract is necessary to provide for the sick and afflicted poor of said city. The court further finds as a fact that the sum of $10,000 per annum as provided in said contract to be paid by the city of Raleigh is less than fifty per cent of the actual cost to the city of Raleigh of caring for the sick and afflicted poor of said city during the past few years, as shown by the experience of said city; and that said sum of $10,000 is a fair and reasonable sum for the services to be rendered by the trustees of Rex Hospital under said contract; and that an emergency now exists which makes it imperative for the city of Raleigh to enter into said contract, and thereby provide for the proper care and maintenance of its indigent sick and afflicted poor who require medical treatment and hospital care.
"5. That the commissioners of the city of Raleigh and the city of Raleigh are duly and legally authorized to enter into said contract by the Constitution of North Carolina, the laws of said State, and particularly by an act of the General Assembly of said State at its regular session in 1935, known as House Bill No. 288, and are duly and legally authorized and empowered to levy taxes for the purpose of paying the sums to become due annually under said contract, and to pledge the full faith and credit of the city of Raleigh to the payment of said sums.
"CONCLUSIONS OF LAW.
"Upon the foregoing findings of fact the court concludes:
"1. That all persons interested in this controversy are now within the jurisdiction of the court, and are properly before the court. *Page 375 
"2. That the consideration set forth in said contract is for a necessary expense of the city of Raleigh, and that said contract is fair and reasonable, and is in the interest of the city of Raleigh and all its citizens and taxpayers; that the taxes to be levied annually for the payment of the annual sum to be paid under said contract by the city of Raleigh will be for the necessary expenses of the city of Raleigh, and will be valid without the approval of a majority of the qualified voters of the city of Raleigh; that the levying of said taxes are expressly exempted and excepted from any limitation, restriction, or provision contained in the County Fiscal Control Act and acts amendatory thereof, as it may be applicable to cities or towns by virtue of section 65, chapter 60, Public Laws of North Carolina, 1931; and that the levying of said taxes is likewise expressly exempted and excepted from any limitation, restriction, or provision contained in any general, special, private, or public-local law, or in the charter of the city of Raleigh, relating to the execution of contracts, the appropriation of money, and the levying of taxes therefor. That the act of the General Assembly hereinabove referred to is constitutional.
"3. That the contract is binding and legal and, when properly executed, will be the binding and legal obligation of the city of Raleigh.
"It is, therefore, on motion of Thomas W. Ruffin, attorney for the defendants, by the court ordered, considered, adjudged, and decreed:
"1. That the city of Raleigh and the individual defendants composing the Board of Commissioners of the city of Raleigh be and they are hereby fully authorized and empowered to enter into the contract described in the pleadings, and do any and all things necessary to make said contract the legal and binding obligation of the city of Raleigh.
"2. That said contract, when properly executed, shall and it is adjudged to be a legal and binding obligation of the city of Raleigh.
"3. That the commissioners of the city of Raleigh, and their successors in office, are hereby adjudged to have the authority and are hereby authorized and empowered to levy taxes for the payment of the amounts to become due under said contract, in an amount and at a rate sufficient to provide for the payments called for under the said contract as the same mature.
"4. That the plaintiff's prayer for a restraining order is hereby denied, and the plaintiff's cause of action is hereby dismissed, it being found as a fact that this action was brought solely for the purpose of restraining the defendants from executing said contract.
"5. That the defendants recover their costs, to be taxed against the plaintiff."
The plaintiff excepted to the foregoing judgment, and appealed to the Supreme Court of North Carolina, assigning as error the signing of the judgment. *Page 376 
The contract which the defendant Board of Commissioners of the city of Raleigh proposes to make with the trustees of Rex Hospital is in all respects authorized by the statute which was enacted by the General Assembly of North Carolina at its regular session in 1935, and for that reason, when duly executed pursuant to the resolution of said Board of Commissioners, will be a legal and binding obligation of the defendant city of Raleigh, unless the statute itself, in some of its provisions, is invalid because it was enacted in violation of some provision of the Constitution of North Carolina. See Martin v. Board of Commissioners ofWake County, ante, 354.
The statute declares that contracts made in accordance with its provisions, and taxes levied under its authority, are for a "necessary expense" within the meaning of these words as used in the Constitution of North Carolina, and that such contracts and taxes shall be valid without the approval of a majority of the qualified voters of the city or town.
The only question presented by this appeal which seems to require consideration by this Court is whether the provision of the statute contravenes the provision of the Constitution of North Carolina found in section 7, Article VII, which is as follows:
"No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."
If the contract which the Board of Commissioners of the city of Raleigh proposes to make with the trustees of Rex Hospital, and the taxes which the said Board of Commissioners agrees to levy, if necessary to provide funds to enable the city of Raleigh to carry out said contract, are for a necessary expense of the city of Raleigh, then said contract, when duly executed, and said taxes, when duly levied, will be valid.
The declaration by the General Assembly and the finding by the Board of Commissioners of the city of Raleigh, that both the contract and the tax are for an expense which is necessary for the city of Raleigh to incur is not conclusive upon the courts of this State; both, however, are persuasive, and it appearing that both are made in good faith, such declaration and finding are entitled to serious consideration by the courts in deciding the question presented by this appeal. See Wilson v. Charlotte,74 N.C. 748.
In Henderson v. Wilmington, 191 N.C. 269, 132 S.E. 25, it is said: "The decisions heretofore rendered by this Court make the test of a necessary *Page 377 
expense, the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice; if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the State's delegated sovereignty; if, in brief, it involves a necessary governmental expense — in these cases the expense required to effect the purpose is necessary within the meaning of Article VII, section 7, and the power to incur such expense is not dependent on the will of the qualified voters."
In Fawcett v. Mount Airy, 134 N.C. 125, 45 S.E. 1029, it is said: "It is almost impossible to define in legal phraseology the meaning of the words `necessary expenses' as applied to the wants of a city or town government, a precise line cannot be drawn between what are and what are not such expenses. The consequence is that, as municipalities grow in wealth and population, as civilization advances with the habits and customs of necessary changes, the aid of the courts is constantly invoked to make decisions on this subject. In the nature of things it could not be otherwise; and it is not to be expected, in the changed conditions which occur in the lives of a progressive people, that things deemed necessary in the government of municipal corporations in one age should be so considered for all future time. In the effort of the courts to check extravagance and to prevent corruption in the government of cities and towns, the judicial branch of the government has probably stood by former decisions from too conservative a standpoint, and thereby obstructed the advance of business ideas which would be most beneficial if put into operation; and this conservatism of the courts, outgrown by the march of progress, sometimes appears at a serious disadvantage."
Applying the test law laid down by Justice Adams in Henderson v.Wilmington, supra, and approving the principle stated by Justice Montgomeryin Fawcett v. Mount Airy, supra, we are of the opinion, and so hold, that on the facts found by the Superior Court, the expense of providing for the medical treatment and hospital care of the indigent sick and afflicted poor of the city of Raleigh is a necessary expense of the said city, and that for that reason the contract appearing in the record, when duly executed, will be a legal and binding obligation of the city of Raleigh, and that the taxes provided for therein, when duly levied, will be valid and collectible.
The judgment is accordingly
Affirmed.
STACY, C. J., dissents upon the grounds stated in the dissent filed in the companion case of Martin v. Commissioners of Wake County, ante, 354. *Page 378